Doyle HOWELL, Plaintiff/Appellant,

v.

ST. LOUIS STEEL ERECTION CO. and McCarthy Brothers Construction Co., Defendants/Respondents.

No. 63849.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 21, 1993.

Henry B. Robertson, St. Louis, for plaintiff, appellant.

Bernard C. Brinker, Gary Phillip Paul, Brinker, Doyen & Kovacs, Clayton, for St. Louis Steel Erection Co., Inc.

Joseph H. Mueller, Robyn Susan Fox, Moser, Marsalek, P.C., St. Louis, for McCarthy Bros. Const. Co.

REINHARD, Judge.

Plaintiff appeals the trial court's orders granting defendants' motions for summary judgment in his breach of contract case against defendants.[1] We affirm.

In his petition, plaintiff alleged that defendants had each agreed to pay him $750,000 on the condition of his "settling and dismissing" a personal injury claim against defendants. He alleges that he fully performed by dismissing the case but defendants had paid only $500,000 each of their agreed payment.

Plaintiff was injured in an accident involving falling steel at the Bi–State Garage on November 18, 1986. He filed a personal injury action against these defendants and others. The case proceeded to a jury trial and on November 11, 1986, plaintiff and defendants announced to the court they were settling the case. The court passed the case for settlement. On November 12, defendants' excess insurer, Mission Insurance (Mission), ceased paying claims pursuant to an order by the State of California. On November 18, plaintiff signed two Release and Settlement Agreements (Releases), one with McCarthy Brothers Construction Co. (McCarthy) and one with St. Louis Steel Erection Co. (Steel).[2] The parties on that

1. Defendant McCarthy Brothers Construction Co. motion to dismiss the appeal because of insufficient and untimely notice is denied.

2. The language of the two Releases is identical other than the name of the defendant. Each Release provides:

WHEREAS, [plaintiff's] case against [defendant] and other defendants was assigned to Division 5 of the Circuit Court of the City of St. Louis for trial on November 3, 1986, and

WHEREAS, Aetna Casualty and Surety Company as primary insurer of [defendant] offered to pay its full insurance policy limit of $500,000 in settlement of the claims of [plaintiff] and Bituminous Casualty Company, and

WHEREAS, [Mission], excess insurer of [defendant] offered to pay $250,000 on behalf of [defendant] in settlement of said claims, and

WHEREAS, [defendant's] attorney has in hand Aetna's check for $500,000, and

WHEREAS, [plaintiff] has been informed that [Mission] has been ordered by the Conservator for the State of California and or the State of California Insurance Department not to pay any claims as of November 12, 1986, and

WHEREAS, a dispute has, therefore, arisen as to whether there was in fact a settlement and whether any other person or party was obligat-

ed to pay the amount offered by [Mission] and a disagreement arose as to when [Mission's] money was to be paid, and

WHEREAS, [plaintiff] and Bituminous Casualty Company after having advice of counsel wish to accept the offer made by Aetna and in consideration thereof is willing to fully release and discharge [defendant] and he will pursue his claim or cause of action against [Mission], and

WHEREAS, the parties wish to make a written record of this agreement it is, therefore, agreed by and between the parties as follows:

1. [plaintiff] for the sole consideration of Five Hundred Thousand Dollars ($500,000) paid by Aetna Casualty and Surety Company on behalf of [defendant] and in consideration of the payments made by other defendants in the case and in consideration of [plaintiff's] right to pursue whatever claim or cause of action he has against [Mission] has released and discharged and by these presents does for himself, his heirs, executors, administrators, and assigns, release and forever discharge [defendant], its agents, employees, shareholders, and all other persons, firms or corporations from all claims, demands, damages, actions or causes of action on account of damage to prop-

day also filed a Stipulation of Dismissal With Prejudice (Dismissal)[3] as to the claim of plaintiff effective against defendants, but specifically excepting a release of Mission from its obligation to pay plaintiff $500,000. Subsequently, plaintiff brought this breach of contract action alleging defendants had breached the settlement agreement of November 11, 1986. Defendants independently filed motions for summary judgment which were sustained.

Summary judgment was granted on behalf of McCarthy on June 4, 1991. Plaintiff's remaining claims were dismissed for failure to prosecute on December 18, 1992. This order was later rescinded. Steel then filed a motion to dismiss, or in the alternative, for summary judgment. Summary judgment was granted on March 12, 1993. Plaintiff appeals from the summary judgments.

The trial court shall enter summary judgment if: (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and, (2) the moving party is entitled to the judgment as a matter of law.

Rule 74.04(c). Once a movant has met his burden, the nonmovant's only recourse is to show by counter affidavits, depositions, answers to interrogatories or admissions on file that one or more of the material facts is genuinely disputed. *ITT Commercial Financial Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). A genuine issue is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382.

When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, according the nonmovant the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993).

Defendants attached to their motions the executed Releases and the Dismissal of plaintiff's petition for damages. Plaintiff filed three affidavits and a transcript of the proceedings that occurred when the case was passed for settlement.

■ The law presumes the validity of executed releases. *Andes v. Albano*, 853 S.W.2d

---

erty, bodily injuries, or death resulting, or to result, from an accident to me which occurred on or about the 28th day of April, 1982, by reason of fall or collapse of steel on Bi–State Garage and of and for all claims and demands whatsoever in law or in equity which [plaintiff], [his] heirs, executors, administrators, or assigns can, shall, or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected, except the claim against [Mission] heretofore mentioned.

It is further understood and agreed that any party hereby released, admits no liability to the undersigned or to any others and shall not be estopped or otherwise barred from asserting, and expressly reserves the right to assert any claim or cause of action such party may have against the undersigned or any others.

2. It is understood and agreed that [plaintiff] is preserving his right to proceed to collect from [Mission] the damages he claims to have sustained by reason of [Mission's] failure to pay the amount previously offered by [Mission] as described herein. *If, however, [plaintiff], receives no money from [Mission], he understands that he will not collect any further sums from [defendant] or Aetna Casualty and Surety*

*Company other than the Five Hundred Thousand Dollars ($500,000) paid when this release is signed.* (Emphasis added).

3. In the event [plaintiff] receives a sum of Two Hundred Fifty Thousand Dollars ($250,000) from [Mission] within sixty (60) days of the signing of this release, he shall fully release [Mission] from any further liability as insurer of [defendant] and for any other cause of action [plaintiff] may have against it.

3. The Dismissal provides:

Comes now the parties by their counsel and stipulate that the claim and lawsuit of [plaintiff] is hereby dismissed with prejudice. All parties agree and stipulate that this dismissal is not intended to, and shall not, act as a dismissal of the lawsuit and claims of Dorothy Howell but only as to the lawsuit and claims of [plaintiff]. This dismissal does not operate as a release of [Mission] of its obligation to pay [plaintiff] the sum of Five Hundred Thousand Dollars ($500,000) pursuant to the settlement of his claim. Should [Mission] not pay said sum within 60 days of November 18, 1986 then and in that event [plaintiff] may take whatever legal remedies are available to him to collect said sum. Should [Mission] file bankruptcy either voluntarily or involuntarily, [plaintiff] may accelerate the 60 day provision of this [Dismissal].

936, 940 (Mo. banc 1993). Defendants thus made a *prima facie* showing that there were no genuine issues of material fact and that they were entitled to a judgment as a matter of law. *Id.*

Plaintiff filed three affidavits in opposition to defendants' motions. The first is plaintiff's affidavit, filed April 23, 1991 which avers plaintiff did not agree to settle his claim with McCarthy. Therefore, it does not apply against the summary judgment motion by Steel. It provides in relevant part:

> I settled my case against [defendants] on the basis that the settlement was [$1,780,000]. I understand [McCarthy] had agreed to pay [$750,000]....
>
> I did not agree to settle my case against McCarthy for [$500,000] and seek the balance from [Mission].

■ The second affidavit was that of plaintiff's former counsel.[4] That affidavit was filed February 24, 1993, almost two years after McCarthy's motion was granted. Affidavits filed the day of the summary judgment hearing or thereafter cannot be considered. *Richardson v. Rohrbaugh,* 857 S.W.2d 415, 418 (Mo.App. E.D.,1993); Rule 74.04(c). Therefore, this affidavit cannot be considered with respect to the summary judgment in favor of McCarthy. However, it may be considered with respect to the summary judgment in favor of Steel. The affidavit states, in relevant part:

> Affiant is further aware that on November 16, 1986 plaintiff ... purportedly signed a contract for release releasing [Steel] from further liability for this claim upon a payment of $500,000.00; but that said release is void and held naught for lack of consideration.
>
> That there is a genuine dispute in that plaintiff's position is that plaintiff is owed a total of $750,000 in settlement from [Steel]; [Steel] believes that they only owe $500,000 toward the settlement of this claim; plaintiff believes that the release for $500,000 is void for lack of consideration; and defendant believes that the release is complete and binding on the parties.

Steel contends this affidavit states legal conclusions, not . facts. We agree. *See Barnes v. York,,* 526 S.W.2d 404, 406 (Mo. App.1975).

The third affidavit was filed the day after Steel's summary judgment hearing. Therefore, it shall not be considered with respect to either motion for summary judgment. *Richardson,* 857 S.W.2d at 418; Rule 74.- 04(c). In sum, only the first affidavit can apply against McCarthy and only the second affidavit can apply against Steel.

■ Plaintiff's principal contention is that these affidavits create a question of fact that precludes summary judgment. Language that is plain and unambiguous on its face will be given full effect within the context of the agreement as a whole unless the release is based upon fraud, accident, misrepresentation, mistake, or unfair dealings. *Andes,* 853 S.W.2d at 941.

■ The Releases here are plain and unambiguous on their face. The record reveals that at the time the case was passed for settlement there had not been a finalization of the settlement nor a dismissal of the case. In the Releases, the parties recognized that various insurance companies had offered to pay certain amounts on behalf of defendants. They also recognized that one of the insurers, Mission, had been ordered by the State of California not to pay any claims as of November 12, 1986. Thus, plaintiff had been informed of this after the court had passed the case for settlement and before the execution of the Releases and dismissal of the cause of action. The parties stated in the Releases that "a dispute has ... arisen as to whether there was in fact a settlement and whether any other person or party was obligated to pay the amount offered by [Mission] and a disagreement arose as to when [Mission's] money was to be paid."

The parties therefore agreed that for the "sole consideration" of $500,000 which was to be paid by Aetna on behalf of each defendant and in consideration of the payments made

---

4. Plaintiff is represented by different counsel upon appeal than he was during the course of the settlement proceedings.

by other defendants in the case and in consideration of plaintiff's right to pursue any claim or cause of action against Mission, plaintiff released defendants from all causes and damages arising from the accident which was the subject of his lawsuit.

The Releases further provided "it is understood and agreed that this is a full and final release of all claims of any nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected, *except the claim against [Mission]....*" (Emphasis added).

The Releases here clearly express plaintiff's intent that he be barred from all other claims against defendants arising out of his accident. They specifically reserve plaintiff's right to pursue any cause of action he has directly against Mission. The Dismissal is in accord with the intentions clearly expressed in the Releases. Plaintiff has retained the right to enforce any claim he has against Mission to pay an additional $500,000.

Thus, the Releases are plain and unambiguous on their face and plaintiff's affidavits do not present an issue which rises to the level of a fact dispute as to fraud, accident, misrepresentation, mistake or unfair dealings. *Andes,* 853 S.W.2d at 941. Point denied.

 Plaintiff also contends the Releases were void for lack of consideration. We agree with plaintiff that a release requires consideration. *Weindel v. DeSoto Rural Fire Protection Association, Inc.,* 765 S.W.2d 712, 715 (Mo.App.1989). There can be no release unless there exists at the time of the claimed release a bona fide controversy concerning defendants' legal liability on some issue in dispute between the parties. *Weindel,* 765 S.W.2d at 715–16.

 Plaintiff argues defendants did no more than agree to perform pre-existing legal obligations. An exception exists to the rule that performance or a promise to perform an existing legal obligation is not valid consideration. *State ex rel. Gus T. Handge & Son Painting Co. v. Tri–State Construction Co.,* 662 S.W.2d 928, 929 (Mo.App.1983).

Where the existence of the legal duty is the subject of an honest and reasonable dispute, the general rule is inapplicable. *Id.* That is the case here.[5] In the instant case, each party received consideration. Plaintiff received $500,000 from both Steel and McCarthy in exchange for his releasing them from any further liability on both the original accident and any purported settlement agreement. Thus, the trial court did not err in granting the summary judgments.

We affirm.

CRANDALL, P.J., and CRIST, J., concur.

---

5. It is important to note that whereas an "honest and reasonable" dispute existed as to plaintiff's right to payment under the settlement agreement of November 11, no such dispute exists as to his rights under the Releases.