Jay **ANGOFF, Director of the Missouri Department of Insurance, as receiver for Continental Security Life Insurance Company, Respondent,**

v.

**Richard K. MERSMAN, III, Appellant,**

and

**Executive Management and Consultants, Inc., Donald J. Flier, Carl DiSalvo, Irven Hammerman, Gordon A. Gundaker, and Arthur A. Blumeyer, III, Defendants.**

**Nos. WD 50547, WD 50642 and WD 50643.**

Missouri Court of Appeals,
Western District.

March 12, 1996.

---

H. Kent Munson, St. Louis, for appellant.

Dana Frese, Jefferson City, for respondent.

Jerry Venters, Jefferson City, for defendant Irven Hammerman.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

SPINDEN, Judge.

Jay Angoff, as director of the Missouri Department of Insurance and receiver for the Continental Security Insurance Company, sued Richard K. Mersman, III, Irven Hammerman, Executive Management and Consultants, Inc., and others to collect sums due under a promissory note for Continental Security. Mersman defended on the ground that the director had released him from any obligation under the promissory note. In December 1994, the circuit court entered judgment for Angoff. We reverse.

Continental Security was a Missouri insurance company owned principally by Executive Management and Consultants, a holding company owned by various investors in Continental Security, including Mersman and Hammerman. These investors also served

as Continental Security's directors and officers.

In November 1988, Mersman and Executive Management and Consultant's other shareholders, at the behest of the Department of Insurance, gave Continental Security a promissory note for $700,000 to add capital to the failing insurance company. In March 1989, James Oetting, the Department of Insurance's chief financial examiner, concluded that Continental Security was in sufficiently bad financial condition that the investors should pay the $700,000 promised. Mersman and two other investors paid Continental Security $154,000, as their share of the obligation. Nicholas M. Monaco, attorney for the note makers and as trustee, tendered a check for $700,000 to the Department.

On July 7, 1989, the circuit court declared Continental Security insolvent and ordered it into receivership for liquidation. The court appointed Lewis E. Melahn, then director of the Department, as Continental Security's receiver.[1] On that same day, Melahn agreed to release Mersman and the other investors from "any claim, demand, action or suit of whatever kind or nature, either directly or indirectly, for injuries or damage, to person or property, resulting or to result from the impaired, insolvent, or financially hazardous condition of the company."

Robert Deck, special deputy receiver of Continental Security, later discovered that Mersman and the other investors had used $507,500 of Continental Security's money to fund the Monaco trust account check. In 1992, Melahn sued Mersman and the other investors and Executive Management, alleging that they had failed to pay in full the required sum due under the promissory note and still owed $161,000, plus interest.[2] Melahn also alleged that Monaco's trust account check did not satisfy the note obligation because a portion of the funds used to cover the check were owned by Continental Security.

The circuit court convened a hearing on December 22, 1993. On December 3, 1994,

---

1. After this lawsuit was filed, Jay Angoff succeeded Lewis Melahn as the Department's director.

2. At the time of the hearing, the balance remaining on the promissory note was $82,243.01, including interest, after giving credits for amounts paid by the shareholders of Executive Management from their personal funds.

the circuit court entered a judgment for the director. Mersman and Hammerman appealed. Executive Management did not appeal. This court dismissed Hammerman's appeal; therefore, we address only Mersman's appeal.

Mersman argues that the trial court erred in concluding that Melahn's agreement of July 7, 1989, not to sue Mersman and the other investors did not release him from his obligation under the promissory note. He complains that the circuit court's allowing extrinsic evidence as to the scope and effect of the covenant was error because the covenant was not ambiguous. He also claims the covenant's language cannot be disregarded on the basis of fraud, mistake or unfair dealing because the director did not plead or prove these matters.

■ Under Missouri law, a covenant not to sue is considered a release. *Montrose Savings Bank v. Landers*, 675 S.W.2d 668, 670 (Mo.App.1984). The law presumes that a release is valid. *Howell v. St. Louis Steel Erection Co.*, 867 S.W.2d 677, 679 (Mo.App. 1993). "This presumption is founded in the policy of law to encourage freedom of contract and the peaceful settlement of disputes." *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo.1993).

■ The circuit court's conclusion that the covenant did not release Mersman and the other investors from their obligations under the promissory note was based, for the most part, on the director's evidence that Melahn did not intend to release the investors from their obligations under the promissory note because he believed the note had already been paid and the purpose of the covenant was merely to release the directors and officers of Continental Security from claims of mismanaging the company. Although Mersman objected to this parol evidence, the circuit court concluded that it was admissible because the covenant did not specifically refer to the promissory note, and was therefore ambiguous. The circuit court relied on this evidence in concluding that the covenant did not release Mersman and the other defendants from their obligations under the promissory note.

■ A contract is ambiguous only if its terms are susceptible to more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Jake C. Byers, Inc., v. J.B.C. Investments*, 834 S.W.2d 806, 816 (Mo.App. 1992). "A contract is not ambiguous merely because the parties disagree over its meaning." *Id.* To determine whether a contract is ambiguous, we consider the whole document and give words their natural and ordinary meaning, *id.*, unless the release is based upon fraud, accident, misrepresentation, mistake or unfair dealing. *Andes*, 853 S.W.2d at 941.

The covenant stated:

For the consideration of certain efforts made by the signatures hereto to rehabilitate Continental Security Life Insurance Company ... the Director of the Missouri Division of Insurance ... does hereby covenant ... to refrain and desist from instituting or asserting against any member of the board of directors or officer of the company any claim, demand, action or suit of whatever kind or nature, either directly or indirectly, for injuries or damage, to person or property, resulting or to result from the impaired, insolvent, or financially hazardous condition of the company.

. . . .

It is further expressly understood and agreed that as against the Director of the Missouri Division of Insurance, his successors, agents and assigns, this instrument may be pleaded as a counterclaim to or as a defense in bar or abatement of any action for injuries or damages whatsoever, brought, instituted or taken by or on behalf of the undersigned Director of the Missouri Division of Insurance on account of the above described condition[.]

■ The covenant was not ambiguous. "Any" and "whatever kind" are all inclusive; nothing is excluded. Nothing is unclear about this. No one should have difficulty understanding what is included and what is excluded. The covenant also provided that it could be pleaded as a counterclaim or defense to "any action for injuries or damages whatsoever" by the director. Again, "any"

and "whatsoever" are inclusive—excluding nothing. Nothing is ambiguous about these terms. That the covenant did not refer to the promissory note is inconsequential. As a kind of claim, the promissory note was included in the class defined by the covenant as released. Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed. *Liberty v. J.A. Tobin Construction Company*, 512 S.W.2d 886, 890 (Mo.App.1974).

 A party cannot use parol evidence to create an ambiguity or to show that an obligation is other than that expressed in the written instrument. Nor can it use parol evidence to vary or contradict terms of an unambiguous instrument unless the party contends fraud, mutual mistake, accident or erroneous omission. *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979). The circuit court erred in concluding that it should allow parol evidence on the basis that the covenant was ambiguous. Nor did the circuit court have a basis for hearing the parol evidence on the basis of fraud, mistake or unfair dealing. Although the evidence indicates that misrepresentations may have occurred which caused Melahn to enter into the agreement, the director did not allege these matters.

Mersman raised the release as an affirmative defense. To avoid an affirmative defense alleged in an answer, a plaintiff must plead specifically matters of affirmative avoidance. *In re Estate of Kilbourn*, 898 S.W.2d 583, 587 (Mo.App.1995); *Jaycox v. Brune*, 434 S.W.2d 539, 547 (Mo.1968). Rules 55.01 and 55.08 require that an affirmative avoidance or defense be pleaded in response to a preceding pleading. *Mehrle v. Mehrle*, 813 S.W.2d 886, 890 (Mo.App.1991). The plaintiff's reply should distinctly allege the grounds of avoidance. *Jaycox*, 434 S.W.2d at 547. Matters of avoidance are not available to a party who does not plead them specifically. *Schwartz v. Lawson*, 797 S.W.2d 828, 835 (Mo.App.1990). An affirmative avoidance is waived if the party raising it has neglected to plead it. *Kilbourn*, 898 S.W.2d at 587.

The director's amended petition alleged an action for breach of a promissory note for nonpayment. Mersman's answer raised the covenant not to sue as an affirmative defense. Neither the director's amended petition nor his reply alleged an affirmative avoidance or defense of fraud, mistake or unfair dealing. The director's failure to allege fraud, mistake or unfair dealing as an affirmative avoidance waived his right to assert these claims.

These matters were not tried by implied consent. Mersman made continuing objections to the parol evidence.

Pursuant to the clear and unambiguous terms of the covenant, we find that the promissory note was included in the class defined by the agreement as released. The circuit court erred in determining otherwise.

We, therefore, reverse the circuit court's judgment.

All concur.