**KANSAS CITY, Missouri, A Municipal Corporation, Respondent,**

v.

**Gregory T. COLBERT, Appellant.**

**No. WD 54947.**

Missouri Court of Appeals,
Western District.

Aug. 11, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1998.

Application for Transfer Denied
Nov. 24, 1998.

Richard L. Colbert, Kansas City, for appellant.

Walter J. O'Toole, City Atty., Saskia Jacobse, Asst. City Atty., Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

ULRICH, Judge.

Gregory Colbert appeals the trial court's dismissal with prejudice of his counterclaim

against the municipal corporation, Kansas City, Missouri (City), based on a settlement agreement between him and the City. He claims that the specific terms of the settlement agreement did not dictate dismissal of his counterclaim. The judgment of the trial court is affirmed.

On October 15, 1996, the City filed a petition for delinquent earnings tax against Mr. Colbert (Civil Case No. CV96–25178). The petition, based on Mr. Colbert's federal income tax returns showing a Kansas City address, prayed for judgment against Mr. Colbert in the amount of $1818.19 plus interest representing unpaid taxes and penalties for 1991 through 1994 under the Earnings and Profits tax of Kansas City, Missouri. On May 23, 1997, Mr. Colbert filed an amended answer to the City's petition stating that he was not a resident of or employed in Kansas City, Missouri, during the time specified in the petition and, thus, not subject to taxation under the Earnings and Profits tax. Mr. Colbert also filed a counterclaim against the City alleging illegal prosecution and willful disregard for his rights and requesting punitive damages not to exceed $300 million. Mr. Colbert also filed a complaint in federal court (Case No. 97–0886–CV–W–8) to enjoin his state prosecution for nonpayment of the earnings tax and for money damages on June 20, 1997.

In the course of the federal action, a pretrial early assessment meeting was conducted on August 28, 1997. At the meeting, a settlement was reached by the parties to conclude all pending litigation. A settlement agreement was drafted and signed by Mr. Colbert's attorney and two attorneys for the City. The agreement provided, in full:

### SETTLEMENT AGREEMENT

The parties agree to dismiss their respective cases, *Colbert v. KC*, 97–0886–CV–W–8 and *KC v. Colbert*, CV96–25178, with prejudice under the following conditions:

1. The City of Kansas City, Missouri agrees to re-calculate* * the Earnings Tax liability for the years of 1991, 1992, 1993 and 1994, based on the Federal Income Tax Forms and W–2 forms for the aforesaid years.

2. The City of Kansas City and Gregory Colbert will bear their own [sic] costs and attorney's fees for each of the above-noted cases.

3. Gregory Colbert, upon re-assessment, shall pay the City of Kansas City any taxes due and owing, along, with applicable interest and penalties within 10 days after the entry of the assessment.

4. If Gregory Colbert does not meet the conditions set forth above, jurisdiction of the Circuit Court of Jackson County shall re-vest and the City of Kansas City, Missouri, shall take judgment for the amount assessed, along with interest, penalties, attorney's fees [sic] and costs.

* * Re-calculate means excluding income earned in Tennessee and earnings taxes withheld by non-Tennessee employers.

In accordance with the settlement agreement, the City dismissed its petition for delinquent earnings tax (CV96–25178) filed in state court with prejudice on September 9, 1997. Mr. Colbert, however, refused to dismiss his counterclaim in the state case, and a September 29, 1997, hearing date was set. Mr. Colbert did file a motion to dismiss the federal court case (97–0886–CV–W–8) on September 11, 1997. The motion has not yet been ruled on.

Based on Mr. Colbert's refusal to dismiss his counterclaim, the City filed a motion on September 23, 1997, to set aside the dismissal of its petition and enter judgment against Mr. Colbert for delinquent earnings tax in the principal amount of $1268.27 plus interest, penalties, and attorney's fees or to enforce the settlement agreement. A hearing was held on the motion on September 29, 1997. The City offered the testimony of Douglas McMillan, an assistant city attorney for the City who participated in the settlement negotiation. Mr. McMillan testified that during the settlement negotiations, the parties agreed to conclude all pending litigation. Mr. Colbert did not present any evidence at the hearing. Following the hearing, the trial court overruled the City's motion to set aside the dismissal of its petition and granted its motion to enforce the settlement agreement. The court found that the settle-

ment agreement contemplated the dismissal of Mr. Colbert's counterclaim in state court and dismissed the counterclaim with prejudice. This appeal followed.

On appeal, Mr. Colbert claims that the trial court erred in dismissing his counterclaim against the City based on the settlement agreement. He argues that the specific terms of the settlement agreement did not dictate dismissal of his counterclaim.

 Interpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement. *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993); *Park Lane Medical Ctr. of Kansas City, Inc. v. Blue Cross/Blue Shield of Kansas City*, 809 S.W.2d 721, 724 (Mo.App.1991). The primary rule of contract construction is that the intention of the parties shall govern. *Id.* The scope of the settlement is determined by the intent of the parties, ascertained from the language used and from the circumstances surrounding the settlement. *Schroeder v. Dy–Tronix, Inc.*, 723 S.W.2d 934, 936 (Mo.App.1987); *Ste. Genevieve County v. Fox*, 688 S.W.2d 392 (Mo.App.1985). Where the language of the settlement agreement is plain and unambiguous on its face, the intent of the parties is to be garnered from the agreement. *Andes*, 853 S.W.2d at 941; *Park Lane*, 809 S.W.2d at 725. "Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed." *Angoff v. Mersman*, 917 S.W.2d 207, 211 (Mo.App.1996).

■ The issue is whether the scope of the settlement agreement included the dismissal of Mr. Colbert's counterclaim. The plain and unambiguous language of the agreement expressed the intent of the parties that dismissal of the counterclaim was included within the scope of the agreement. The first sentence of the agreement provided, "The parties agree to dismiss their respective cases, *Colbert v. KC*, 97–0886–CV–W–8 and *KC v. Colbert*, CV96–25178, with prejudice under the following conditions." This language asserts the intent of the parties to conclude "all litigation" in this matter. All litigation in this matter included Mr. Colbert's counterclaim. Nothing in the agreement reserved or limited the scope of the agreement to

exclude the counterclaim. The trial court, therefore, properly dismissed the counterclaim in enforcing the agreement.

The judgment of the trial court is affirmed.

All concur.